Mr. Matthews? Good morning, Your Honor. May it please the Court, James Matthews, Fox Rothschild LLP for the Appellant Kane Builders. With the Court's permission, I'll reserve three minutes for rebuttal. Went over the holiday, Your Honors, I let my first-year law student daughter read the briefs in this matter. She characterized it as the civil procedure exam from hell. And I tend to agree with her. Unfortunately... Thank you, because the question I asked my law clerks last week when we had a sit-down to talk about this case was just simply, does this just boil down to being a civil procedure case? It can be resolved as a civil procedure case. There are other issues. Unfortunately, however, unlike a civil procedure exam, this is not merely a hypothetical and it has the very real result, at the end of the day, after the various what we contend to be errors in civil procedure compound one another, results in what is effectively a $2 million death sentence against this small business. That being really the nub of the case, I would propose, unless the Court has questions on other issues, to focus on why the judgment in Kane 2, which is the fund's claim for unpaid contributions, cannot stand. I suppose the first and most puzzling issue is that the Court apparently granted summary judgment on liability in Kane 2. Which was not asked for. Which was not asked for. Damages were the focus. It was not asked for. And in fact, in their brief, or in his brief, Mr. Heineman concedes that they never asked for summary judgment on liability or a finding of liability of any kind on Kane 2 because they, in his view, they were not required to. Now, reading that brief and reading between the lines of what the district court did, it appears that the only way liability could have been found in Kane 2 is by giving some kind of something that happened in Kane 1. And the preliminary injunction part. Well, and there we have another disagreement because it would appear from Judge Kavanaugh's opinion that in his view, liability was over once he denied the petition for preliminary injunction. However, in his brief, Mr. Heineman places no reliance on that at all. And rather suggests that the preclusive event was the arbitrator's decision. But in response to Judge Sirica's question, his question really suggests the only way there could have been some preclusive effect here, doesn't it? I mean, couldn't the only way preclusion had been effected would have been to have given any preclusive effect to this alleged finding of fact made by Judge Kavanaugh at the preliminary injunction or after the preliminary injunction proceeding? We believe that to be correct, Your Honor, because we are aware of no Third Circuit authority which would give an unenforced arbitration award any preclusive effect. Well, except that, I suppose, Mr. Heineman looks for whatever would give him the most deferential standard of review, which, of course, would be an arbitrator's decision. The issue there, Your Honor, is that we're not looking and we're not challenging in this case under the Steelworkers Trilogy standard for the review of an arbitration award the merits of what the only thing that the arbitrator told us he did, which is to find that on those facts, Cain Builders owes the union $53,000. There is no discussion in the arbitration award of a full litigation of the issue of whether Cain is a party to the contract. We don't know whether the arbitrator made the same mistake we respectfully suggest Judge Kavanaugh made. If Judge Kavanaugh made a mistake, whichever one he allegedly made, when he ruled of the preliminary injunction denying it on December 6, 2004, six years ago, almost six years, the whole house of cards falls, doesn't it? Well, it's not so much in our We're back to square one. We are in the case ultimately back to square one, but I'd suggest, Your Honor, that it's not a question of whether Judge Kavanaugh made a mistake in denying the petition for preliminary injunction. The mistake Judge Kavanaugh made was later treating what he had done as perclusive. Well, I agree with that, but so much of what followed was dependent in Judge Kavanaugh's view on the fact that you were a signatory to a CBA. So if that goes for whatever reason, that the factual findings were clearly erroneous or something, you're back to square one. Absolutely, Your Honor. The fact that without that factual determination as to a signatory, the other side doesn't really have any basis for what subsequently occurred, do they? We do not believe so, Your Honor. There was never an agreement, as I understand the record, between the parties that as so often happens, in fact, in my experience it almost always happened, that the preliminary injunction proceeding and any permanent injunction proceeding would be collapsed into a single proceeding for purposes of finality. Absolutely not, Your Honor, and that's the distinction between, and that's part of the, not only was there no agreement that the preliminary injunction hearing would be a final hearing on what started out as Kaine's declaratory judgment action that it was not a party. The union in Kaine 1 never counterclaimed to compel arbitration under the Federal Arbitration Act. Had they done that, and there was fair notice then that the court was going to litigate and ultimately decide the ultimate issue of whether Kaine had affirmatively to arbitrate, that is the issue that Judge Kavanaugh reached in the last sentence of his opinion, his first opinion, which we suggest was simply not before him. This was nothing more than a preliminary injunction hearing. The transcript says that. Everything but the last sentence of the opinion says that. The docket entry with the order says that. What's your best line of attack then? Are you challenging the factual findings that were made or are you challenging the procedural part or both? We are challenging both, Your Honor, but the fundamental argument is there was no basis or it was improper certainly procedurally and probably substantively to enter judgment on liability in Kaine 2 regardless of what may or may not happen with the arbitration award in Kaine 1. We are entitled to a jury trial on liability in Kaine 2 and somehow, someway, and we're not even sure how. Did you waive it? Absolutely not, Your Honor. Wait a minute. What I don't understand, these cases have been consolidated, Kaine 1 and Kaine 2. On February 1st, 2005, you filed a motion for a jury trial. Judge Faulk granted it as unopposed. I mean, you've got a jury trial, don't you? That was Kaine 1, Your Honor. But the cases were subsequently consolidated and I don't know how you can go into a jury trial without having to deal with the signatory and authority issues. Well, Your Honor, there is an issue of the jury trial right in Kaine 1 standing alone, but we suggest that it's even clearer that when the funds filed Kaine 2, we answered and demanded a jury trial. And then at the consolidation was at the request of the funds and notwithstanding the argument in their brief now that they were two different cases brought at two different times by two different people about two different things, in their letter brief supporting the motion to consolidate, and that can be found in the record, they argue that these are two cases closely related which arise out of the same nucleus of operative fact and judicial economy will be served by consolidating them so that I think you're, Judge Barry, you're right that there was an unopposed motion for a jury trial in Kaine 1, but you don't even have to get there because you have an unquestioned jury trial right in Kaine 2 that somehow got taken away by some sort of offensive collateral estoppel. But if Judge Kavanaugh's opinion in 2004 was the final judgment for purposes of liability, why then would a jury trial have been granted in Kaine 1? Well, indeed, Your Honor. What else was there to decide? Indeed, Your Honor. If Judge Kavanaugh's denial of the preliminary injunction was a final decision on the merits, why did the case continue at all? Trial briefs were filed in 2007. There were amended complaints. There were magistrate scheduling orders. There was discovery. There was all of this. If in 2004 there had been a final decision on the merits, presumably none of that would have happened. When the interlocutory appeal by predecessor, and I confess I was not counsel below, so I'm somewhat at the same loss sometimes as the court. But the fact that when the preliminary injunction was denied, then counsel appealed to this court under 1292A, not 1291, if everybody knew it was a final decision on the merits, it would have been a 1291 appeal from a final judgment. It just seems to us that whether you call it procedural, whether it is necessary to reach the Beacon Theater's Roebuck issue of whether a prior non-jury determination can take away your right to jury trial in a contemporaneously pending jury claim, whether it is the failure of the district court, the use of offensive issue preclusion being, I think, one of the few things that parties agree on here, is permitting offensive issue preclusion is a matter within the discretion of the district court. Not only did the district court not explain any exercise of discretion in that regard sufficient to permit meaningful review, it didn't even tell us that that's what it was doing. How we got to liability in Kane 2 is simply on this record of mystery, as frankly is how we ended up with summary judgment against us on our third-party claim over against the union and Mr. Mosca, which the court did not deal with at all, but we think is fairly red in his position that I've already decided all of this. That would also take care of the third-party claim, but there's still not any discussion there. Again, Your Honor, I see that my time has expired. The bottom line is that Kane 1 can't stand for all the reasons we've discussed in the brief, but regardless of what happens with Kane 1, the judgment in Kane 2 must be vacated and the case must be remanded, we believe, for a trial on the merits of both liability and damages, but at the absolute minimum for full briefing, consideration, and decision on whether there is to be some sort of offensive issue preclusion, and if so, on what basis. Good. Any other questions? Thank you, Your Honor. Mr. Matthews, thank you very much. Mr. Heinemann. Good morning. Good morning, Your Honor. If it pleases the Court, the procedural issue I think here is overblown. This is a case that is centered in the grievance arbitration process. It's a collective bargaining agreement that was allegedly entered into in 2000. The union sought a grievance arbitration under the contract in 2004. The employer went into federal court to attempt to block it in an injunction proceeding, but also sought a declaratory judgment. Injunction proceeding would be contrary to the Norris-LaGuardia Act, so the employer was proceeding under the Declaratory Judgment Act. Under Buckeye v. Cartagena, there was one issue for the court to decide. Footnote 1, Buckeye v. Cartagena, it did the signer have authority to sign the contract. And the court made that finding in your favor because of the testimony of Mr. Moskow, correct? No, Your Honor. I don't think so. I think the court had before it a contract in the complaint filed by the employer. Let me rephrase that. The one witness you put on was Mr. Moskow, correct? That was the union's witness, and there were two other witnesses, but there was also a document. But he was the critical witness. I don't think so, Your Honor. I think what was critical was the contract. The employer said, I signed a one-page thing. And Moskow said he signed to see. Look, I'm not going to quibble what the testimony says. I'm going in another area. Follow me. Sure. Are you familiar with the case of New Jersey Building Laborers District Councils versus Malfetta? Absolutely, Your Honor. Your firm is representing the plaintiffs in that case. We are, yes, Your Honor. And that case is before us or was before us when it's sitting in November, and I am on the panel. Yes, Your Honor. The case has not yet been decided. Yes, Your Honor. And one of the allegations in the case, indeed, some of the evidence in the case, whether or not it was necessary for the arbitrator and Judge Debevoise to consider, was the allegation by the president of Malfetta that Mr. Moskow said for, among other things, for $5,000, the problems will go away. Yes, Your Honor, I'm aware of that. It is also part of that case that Mr. Moskow was under indictment in the Eastern District, New York, correct? Yes, Your Honor. It is also known, at least as a matter of public record, and this is all fraud indictment. This is all union stuff. Yes, Your Honor. It is also known, as a matter of public record, that in, I'm looking for the date here, he pled guilty. In 2008, he pled guilty. I lost track of Mr. Moskow, frankly. Well, he is your witness in this case. He is one of the three witnesses, Your Honor, but what you're missing. But, no, let's go. I apologize. Follow me. Sure. He pled guilty and has been sentenced. If we find, for some reason, other than what I've just described, that this case has to go back to Judge Kavanaugh for another hearing or a trial, this would be highly relevant impeachment evidence were you to put Moskow on again. I would assume so, Your Honor. That's true. That's all I wanted to know. That's assuming the funds would, again, go in and seek contribution in a rehearing or a trial. The key, though, I think, is not Mr. Moskow or the other two witnesses. It's the employer. It is undisputed now. It is a finding of fact signed, the full collective bargaining agreement. In its pleadings, everywhere, at the beginning of this case, it said, and its witnesses said, all they did was sign an order. Judge Kavanaugh said what they signed was the opposite page, even if it was taken out of the book, said collective bargaining agreement. Mr. Spencer signed it on behalf of Kane. But it's clear, he says, I signed an order for him. I guess the dispute, also the dispute, was whether he had authority to sign on behalf of Kane. And your problem, Your Honor, the problem with it is, everything he says is contrary to the one clear, objective fact that he signed. What I keep missing is that Moskow, page 72A, Moskow testifies, Kane authorized Spencer to sign the CBA. Moskow, this is Moskow's testimony. Correct, Your Honor, and the counter to that is, Spencer is sitting there with the collective bargaining agreement book, not a single page. Everything Spencer testified to is belied by the simple, objective fact of the collective bargaining agreement that he signed. The testimony of Spencer and Moskow is that there's a series of telephone conversations with everybody staring at the book. Your Honor, this is not, Spencer's whole testimony. Everybody's staring at the book. Spencer and Moskow are sitting there, Your Honor, having a telephone conversation. Spencer with, with Kane, no, I agree with you, but they're sitting, he says, there was a form. The form was the book that he signed, and Moskow's on the phone with Kane, Spencer's on the phone with Kane, Moskow's on the phone with Kane. They're all looking at Spencer and Moskow as an objective fact, or looking at the book, Your Honor. I think whatever Mr. Moskow's pedigree is, and history is, it's irrelevant to this case. I'd also note that this case involves not Local 325 and the Northern District Council of Laborers, the Southern District Council of Laborers, which Mr. Moskow was a witness, but he's not one of the parties in this case. But going back to what I think is the, the essential element here is under Buckeye, Judge Kavanaugh had the obligation to make a determination of the authority of the signer. He had a full evidentiary hearing. The preliminary injunction hearing, is that? Your Honor, a preliminary, he says that. I'm asking, is that what you are referring to as the evidentiary hearing?  Preliminary injunction hearing. Absolutely, Your Honor. Your Honor, I think that that's really the hearing on the declaratory judgment. The statute, or Buckeye says. And your client opposed the grant of the preliminary injunction, right? Yes, Your Honor. In fact, didn't you argue at the time that arbitration before the State Board ought to proceed? Yes, Your Honor. And in fact, it did. And under Buckeye v. Cartagena. Well, and, and under Section 4 of the Federal Arbitration Act, there would be a right on the part of Cain Brothers to a jury trial. Absolutely. Once they asserted the factual issue that there was not authority to sign or that it had not been signed in its entirety, correct? Correct, Your Honor. But Section 4, as well as Parnet, says you have to make a timely demand for jury. And that was not done. The evidentiary hearing was held in November. The jury demand was not made until February after the determination. And after Judge Kavanaugh said, after seeing the objective evidence. Well, perhaps if a hearing for purposes of a final injunction, a permanent injunction, had been held, that right would have been invoked. But instead, the injunction proceeding just kind of falls into limbo, doesn't it, procedurally? Your Honor, I think, I mean, to me, the injunction proceeding is negated by the Norris LaGuardia Act. This was really a hearing on a declaratory judgment. I mean, many years ago, I had a case before Judge Barry, where she pointed out to me the distinction. And while the Norris LaGuardia Act. That it was probably wrong. I can still feel it on cold days, the lesson I learned. But in the Declaratory Judgment Act allows the determination of the signer's authority. And in this case, there was a hearing. That would not have been allowed on a preliminary injunction under the Norris LaGuardia Act. So this case is really about a declaratory judgment hearing. And there was a hearing. And it was held five months. And it wasn't held pursuant to Rule 65? There was no invocation? Well, I think there was, Your Honor. But I think properly. Sounds like a preliminary injunction hearing. I agree, Your Honor. And I think that was the judge's intent. And, but the judge did the hearing. He had a full evidentiary hearing. And that's what Buckeye says. And no agreement by the parties that that would be the end of things? That that would conclude the record? That that would constitute a hearing for purposes of a permanent injunction? Nor any declaration by the court to that effect? Correct, Your Honor. And, Your Honor, but under Buckeye, it was up to the judge to decide it. It makes no sense, Your Honor, to have Buckeye say the court must decide authority before it goes to arbitration to have a full evidentiary hearing and then send something to arbitration to resolve what Buckeye tells us would be fraud in the execution, fraud in the inducement, the allegations of contract interpretation. If you accept the defendant's argument, what you're really doing is cutting the legs out of Buckeye. You're taking away arbitration to resolve these things because you would be left with going to arbitration and then having a return after a full hearing. In this case, Your Honor, there was a full hearing. There was no right to a jury trial. It was equitable in nature. There was no timely demand for a jury, as in Parnet. And the district court made a finding on the record that as a matter of law, Kane was a signatory. Following that, there was an arbitration, which consistent with Buckeye, resolved the issues of fraud in the inducement, fraud in the execution, all the contractual defenses and is due deference. In Kane 2, the funds action is consolidated. Now, at that point, the court has already decided liability because Kane's a signatory, the arbitration removes all the other defenses, so the only issue left is damages. And I agree, we are relying on offensive collateral estoppel.  Relies on the Combs burden shifting. The only evidence was the audit. All the motion practice, all of discovery went to the issue of damages in this case. The audit result gives us the only evidence of the damages. The employer did not, despite its obligations under ERISA to keep records, have any records of hours worked. The auditor did a fairly conservative estimate of the damages issued as audit and it was confirmed by the court. Your Honor, I think the reality is this case is simply a case about an arbitration proceeding and how the issue of authority under Buckeye, how it gets resolved in handling a case of arbitration. If we accept defendant, we're not taking seriously the court's admonition to the district courts to resolve the issue of signer. We're merely allowing cases to go to arbitration after full hearings and then coming back later for something more. That's not what the Federal Arbitration Act was intended to accomplish. It's intended to accomplish a encouragement of arbitration as a simple mechanism to resolve disputes. And in this case, the district court followed through with that and it's the defendant that has the defendant that has resisted at every step of the way. Thank you, Your Honor. Good. Let me, one question. Sure. And you've, we've alluded to it, but the, obviously, there was a matter of a great dispute, a factual dispute at the preliminary injunction. Hearing as to whether or not a contract had been formed and there is case law in the Third Circuit that says when there are disputed issues of fact at a preliminary injunction hearing. That does not entitle a party to summary judgment without the opportunity of the other side to present additional evidence. And that Kane was offered the opportunity to provide additional evidence to your knowledge. Not that I'm aware of, Your Honor. Okay. Any other questions? Good. Thank you very much, Mr. Hyman. Mr. Matthews. Starting with your final point, Chief Judge Zarek and also the point Judge Smith made, this is at the risk of being flipped, an issue of the quacks like a duck rule. This was a preliminary injunction hearing. That's what the court said it was. That's what everybody understood it to be. It's what the paperwork says it is. It's what everything except that unfortunate final sentence in the court's 2004 opinion says. Apparently, unless I misunderstood Mr. Hyman, the argument now from my colleagues is not only did we not understand that this was something more than a preliminary injunction hearing. Apparently, Judge Kavanaugh didn't understand that this was more than a preliminary injunction hearing and because he couldn't have a preliminary injunction hearing consistent with Norris LaGuardia, so whether he knew it or not, he was having a final trial on the merits of the declaratory judgment action, which just respectfully, Your Honor, makes no sense, whatever. The union could have solved this entire problem by counterclaiming to compel arbitration and invoke the Federal Arbitration Act, and Your Honor is absolutely correct. Had they done that, we would have had an opportunity to invoke our right to jury trial under the Federal Arbitration Act, whether they just didn't think of it, whether they wanted to have it both ways, because they wanted to get to arbitration before there was a final judicial determination of contract formation, I don't know. I wasn't inside their head. But Judge Kavanaugh said in his opinion that they're going to arbitration. Perhaps they felt they didn't have to do a motion to compel, given the fact that Judge Kavanaugh said, you know, I find there's a, you know, valid contract, go arbitrate. No, Your Honor, my point would be they would have asked Judge Kavanaugh to compel the arbitration before he ruled. They would have, they would have counterclaimed, instead of moving to dismiss the declaratory judgment action, which is what they did, they would have counterclaimed and said, Judge, not only should you not enjoin the arbitration for all of the reasons we're now hearing about, including but not limited to Norris LaGuardia, you ought, in fact, to compel arbitration, and let's get this thing decided. And that, of course, didn't happen. The other point, I think, if you read Judge Kavanaugh's 2004 opinion carefully, that final sentence says, under these facts, and this goes to Chief Judge Sirica's point, under these facts, you're obligated to go to arbitration. Well, under what facts? Under the facts adduced at the preliminary injunction hearing. And I think, you know, further to your point, Chief Judge Sirica, the court said many years ago, this is not in our brief, but National Land and Investment Company against Spectre 428F2-91 at 100, the facts after final hearing may appear of different substance and texture and possess very different legal effects, end quote, than at a preliminary injunction hearing. That is exactly the point. And then that brings us to Judge Barry, your point on Mr. Mosca, who was, in fact, indicted as part of the Gambino racketeering indictment in the Eastern District of New York, pled guilty at the end of 2008, and was convicted and sentenced in January of 2009 by Judge Weinstein in Brooklyn. And clearly, if we have an opportunity to try this case, the issue, and again, we're not here to talk about the facts, but whether they go to contract formation, or in a third-party claim over in K2 against the union and Mr. Mosca, the jury easily could find, if they decide that Mr. Mosca is a crook whose testimony is not to be trusted, they could determine that he had forged the contract document. They could determine that he had misrepresented what it was with actual knowledge, that Mr. Spencer had no authority to sign anything other than a document governing the two guys that everybody agrees Mr. Mosca and Mr. Cain discussed. And that, indeed, again leads us to, you know, the other facts here, which is that he brought one guy, the guy worked half a day, disappeared, and they never heard from the union again. In fact, and this brings us to the damages question, which I would like to touch on just briefly, Mr. Heinemann talks about the Combs analysis and the fact that that Cain did not keep payroll records. It is undisputed on this record that 100 cents on the dollar of what the funds are seeking in Cain 2 deals with work performed by subcontractors of Cain, who, under a term of the collective bargaining agreement that no one testifies was ever discussed between these people, would preclude Cain from having subcontracted covered work to non-signatory subcontractors. None of it had anything to do with work that Cain did itself and failed to keep records concerning. Further, and my final point on this is, the Combs analysis permits an inference. That's all it does. It says if we don't otherwise have the records to do this, we will let the fund come in and try and extrapolate or prove its damages other ways and permit the trier of fact to draw inferences from that evidence that will enable them to come up with a damage figure. Drawing an inference is by definition a question of fact for the trier of fact, and that all that happened in this case was that Cain challenged the reliability of the methodology. Asked for a Daubert hearing, was denied the Daubert hearing. Judge Kavanaugh found, again, what was it doing? It was holding, exercising his Daubert gatekeeper function, and the only issue for him there was, was this methodology sufficiently reliable under Daubert to go to the trier of fact, to permit the trier of fact to decide whether or not to draw the requested inference. Good. Mr. Matthews, let me ask my colleagues if they have any other questions. Good. Thank you, Your Honor. We thank you very much. The case was very well argued. We will take the case under advisement. Thank you.